# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

| | |
|---|---|
| STEVEN KIMBLE, Individually and for Others Similarly Situated, | Case No. 1:22-cv-00674 |
| Plaintiff, | JURY TRIAL DEMANDED |
| v. | COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b) |
| EOG RESOURCES, INC., | CLASS ACTION (Fed. R. Civ. P. 23) |
| Defendant. | |

## ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT

1.       Plaintiff Steven Kimble brings this lawsuit to recover unpaid overtime wages and other damages under the Fair Labor Standards Act ("FLSA") and the New Mexico Minimum Wage Act, NMSA §50-4-19, et. seq. ("NMMWA") against Defendant EOG Resources Inc. (EOG).

2.       Kimble and the other workers like him regularly worked for EOG in excess of 40 hours each week.

3.       But these workers never received overtime for hours worked in excess of 40 hours in a single workweek.

4.       Instead of paying overtime as required by the FLSA and NMMWA, EOG paid these workers a daily rate with no overtime pay. This collective action seeks to recover the unpaid overtime wages and other damages owed to these workers.

### JURISDICTION AND VENUE

5.       This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

6.       The Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. §

1367.

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial portion of the events giving rise to this action occurred in this District.

8.      Kimble worked for EOG in this District during the relevant period.

## THE PARTIES

9.      Kimble worked for EOG as a Water Transfer Consultant from approximately September 2019 through October 2020.

10.     Throughout his time with EOG, he was paid a day-rate with no overtime compensation.

11.     Kimble's consent to be a party plaintiff is attached as **Exhibit A**.

12.     Kimble represents at least two classes of similarly situated co-workers

13.     First, Kimble brings this action on behalf of himself and all other similarly situated workers paid by EOG's day-rate system.

14.     EOG paid each of these workers a flat amount for each day worked and failed to pay them overtime for all hours that they worked in excess of 40 hours in a workweek in accordance with the FLSA.

15.     The FLSA class of similarly situated workers consists of:

**Current and former Water Transfer Consultants employed by or performing work on behalf of EOG Resources, Inc., and paid a day-rate without overtime during the past three years.** (the FLSA Class).

16.     Second, Kimble represents a class of similarly situated workers under the NMMWA pursuant to Federal Rule of Civil Procedure 23.

17.     The NMMWA Class is defined as:

**Current and former Water Transfer Consultants employed by or performing**

**work on behalf of EOG Resources, Inc., in New Mexico and paid a day-rate without overtime during the past three years.** (the New Mexico Class).

18.     EOG is a company doing business throughout the United States. EOG may be served by serving its registered agent for services of process, Corporation Process Company, at 726 E Michigan, Suite 330, Hobbs, New Mexico, 88240.

### COVERAGE UNDER THE FLSA

19.     For at least the past three years, EOG has been an employer within the meaning of section 3(d) of the FLSA, 29 U.S.C. § 203(d).

20.     For at least the past three years, EOG has been part of an enterprise within the meaning of section 3(r) of the FLSA, 29 U.S.C. § 203(r).

21.     For at least the past three years, EOG has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $1,000,000 (exclusive of excise taxes at the retail level which are separately stated).

22.     For at least the past three years, Kimble and the members of the FLSA Class were engaged in commerce or in the production of goods for commerce.

23.     EOG treated Kimble (and indeed all its workers that it classified as independent contractors) as employees and uniformly dictated the pay practices to which Kimble and its other employees (including its so-called "independent contractors") were subjected.

24.     EOG's misclassification of Kimble as an independent contractor does not alter its status as an employer for purposes of this FLSA collective action.

## FACTS

25.     EOG is an oil and gas exploration and production company with operations throughout the United States.

26.     To complete their business objectives, EOG hires personnel to perform the necessary work.

27.     Over the past three years, EOG employed dozens of individuals – including Kimble – as Water Transfer Consultants (or similar positions) in several states.

28.     While exact job titles and job duties may differ, these workers are subjected to the same or similar illegal pay practices for similar work.

29.     Specifically, EOG paid these workers a flat sum for each day worked, regardless of the number of hours that they worked that day (or in that workweek) and failed to provide them with overtime pay for hours that they worked in excess of 40 hours in a workweek.

30.     For example, Kimble worked for EOG as a Water Transfer Consultant starting in approximately September 2019 through October 2020.

31.     Throughout his time with EOG, Kimble was paid on a day-rate basis.

32.     As a Water Transfer Consultant, Kimble's primary job duties (and the job duties of all other Water Transfer Consultants employed by EOG who were classified as independent contractors and paid a day-rate) included locating water sources for use on location, unloading and assembling equipment, rigging up and rigging down pumps and other equipment, and monitoring pumps.

33.     Kimble worked well in excess of 40 hours each week while employed by EOG.

34.     The work Kimble performed was an essential part of EOG's core business.

35.     During Kimble's employment with EOG while he was classified as an independent contractor, EOG exercised control over all aspects of his job.

36.     EOG did not require any substantial investment by Kimble for him to perform the work required of him.

37.     EOG determined Kimble's opportunity for profit and loss.

38.     Indeed, EOG controlled all the significant or meaningful aspects of the job duties performed by Kimble.

39.     EOG ordered the hours and locations Kimble worked, tools used, and rates of pay received.

40.     EOG controlled all aspects of Kimble's job activities by enforcing mandatory compliance with EOG's policies, well plans and procedures.

41.     No real investment was required of Kimble to perform his job. He worked on EOG's well sites and utilized equipment and software provided by EOG to perform his job duties on EOG's behalf.

42.     These workers carry out the hands-on, day-to-day production work of EOG.

43.     Kimble did not provide the equipment he worked with on a daily basis.

44.     EOG made the large capital investments in buildings, machines, drilling equipment, personnel, tools, and supplied in the business in which Kimble worked.

45.     Kimble did not incur operating expenses like rent, payroll and marketing.

46.     Kimble was economically dependent on EOG during his employment.

47.     EOG set Kimble's rates of pay, his work schedule, and prohibited him from working other jobs for other companies while he was working on jobs for EOG.

48.     EOG directly determined Kimble's opportunity for profit and loss. Kimble's earning opportunity was based on the number of days EOG scheduled him to work.

49.     Very little skill, training, or initiative was required of Kimble to perform his job duties.

50.     Indeed, the daily and weekly activities of the Water Transfer Consultants were routine and largely governed by standardized plans, procedures, and checklists created by EOG.

51.     Virtually every job function at the well site was pre-determined by EOG, including the tools to use at a job site, the data to compile, the schedule of work, and related work duties.

52.     The Water Transfer Consultants were prohibited from varying their job duties outside of the pre-determined parameters.

53.     The Water Transfer Consultants did not have any supervisory or management duties and to the extent that they did, they performed those duties solely on EOG's behalf and as EOG's representative.

54.     For the purposes of an FLSA overtime claim, the Water Transfer Consultants performed substantially similar job duties related to servicing oil and gas operations in the field.

55.     Kimble performed routine duties that were largely dictated by EOG.

56.     Kimble was not employed by EOG on a project-by-project basis.

57.     In fact, while Kimble was classified as an independent contractor, he was regularly on call for EOG 24-hours a day and was expected to drop everything and work whenever needed.

58.     The Water Transfer Consultants also worked similar hours and were denied overtime as a result of the same illegal pay practice.

59.     The Water Transfer Consultants all worked in excess of 40 hours each week and were often scheduled for daily 12-hour shifts for weeks at a time.

60.     Instead of paying them overtime, EOG paid the Water Transfer Consultants a day-rate.

61.     EOG denied the Water Transfer Consultants overtime for any hours worked in excess of 40 hours in a single workweek.

62.     EOG's policy of failing to pay its independent contractors, including Kimble, overtime violates the FLSA and NMMWA because these workers are, for all purposes, employees performing non-exempt job duties.

63.     It is undisputed that the Water Transfer Consultants are maintaining and working with oilfield machinery, performing manual labor, and working long hours out in the field.

64.     Because Kimble (and EOG's other Water Transfer Consultants) was misclassified as an independent contractor by EOG, he should receive overtime for all hours that he worked in excess of 40 hours in each workweek.

65.     Despite knowing the FLSA and NMMWA's requirements, EOG failed to pay Kimble and the Water Transfer Consultants overtime for hours worked in excess of 40 hours in a single workweek.

**FLSA VIOLATIONS**

66.     Kimble incorporates the preceding paragraphs by reference.

67.     As set forth herein, EOG violated the FLSA by failing to pay Kimble and the FLSA Class Members overtime at 1 and ½ times their regular rate of pay, for hours worked in excess of 40 in a workweek. 29 U.S.C. § 207(a).

68.     EOG knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay the FLSA Class Members overtime compensation. EOG's failure to pay

overtime compensation to these employees was neither reasonable, nor was the decision not to pay overtime made in good faith.

69.     Accordingly, Kimble and all those who are similarly situated are entitled to overtime wages under the FLSA in an amount equal to 1.5 times their rate of pay, plus liquidated damages, attorney's fees, and costs.

**NMMWA VIOLATIONS**

70.     Kimble brings this claim under the NMMWA as a Rule 23 class action.

71.     The conduct alleged violates the NMMWA (NMSA § 50-4-22).

72.     At all relevant times, EOG was subject to the requirements of the NMMWA.

73.     At all relevant times, EOG employed Kimble and each New Mexico Class Member with New Mexico state law claims as an "employee" within the meaning of the NMMWA.

74.     The NMMWA requires employers like EOG to pay employees at one and one-half (1.5) times the regular rate of pay for hours worked in excess of 40 hours in any one week. Kimble and each member of the New Mexico Class are entitled to overtime pay under the NMMWA.

75.     EOG had a policy and practice of misclassifying Kimble and each member of the New Mexico class as contractors and failing to pay these workers overtime for hours worked in excess of 40 hours per workweek.

76.     Kimble and each member of the New Mexico Class seek unpaid overtime in amount equal to 1.5 times the regular rate of pay for work performed in excess of 40 hours in a workweek, prejudgment interest, all available penalty wages, and such other legal and equitable relief as the Court deems just and proper.

77.     Kimble and each member of the New Mexico Class also seek recovery of attorneys' fees, costs, and expenses of this action, to be paid by EOG, as provided by the NMMWA.

78.     The improper pay practices at issue were part of a continuing course of conduct, entitling Kimble and New Mexico Class Members to recover for all such violations, regardless of the date they occurred.

## CLASS AND COLLECTIVE ACTION ALLEGATIONS

79.     Kimble incorporates all previous paragraphs and alleges that the illegal pay practices EOG imposed on them were likewise imposed on the members of the class.

80.     Numerous individuals were victimized by this pattern, practice, and policy which is in willful violation of the FLSA and the NMMWA.

81.     Numerous other individuals who worked with Kimble indicated they were improperly classified as contractors, paid in the same manner, performed similar work, and were not properly compensated for all hours worked as required by state and federal wage laws.

82.     Based on his experiences and tenure with EOG, Kimble is aware that EOG's illegal practices were imposed on the members of the class.

83.     EOG used Water Transfer Consultants paid a day rate and classified as independent contractors across the United States.

84.     The Water Transfer Consultants were all improperly classified as contractors and not afforded overtime compensation when they worked in excess of forty 40 hours per week.

85.     EOG is the true employer of Kimble and the Water Transfer Consultants.

86.     EOG's failure to pay wages and overtime compensation at the rates required by state and/or federal law result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the members of classes Kimble seeks to represent.

87.     Kimble's experiences are therefore typical of the experiences of the members of the classes he seeks to represent.

88.     The specific job titles or precise job locations of the various members of the classes do not prevent class or collective treatment.

89.     Kimble has no interests contrary to, or in conflict with, the members of the classes. Like each member of the FLSA Class and New Mexico Class, Kimble has an interest in obtaining the unpaid overtime wages owed under state and/or federal law.

90.     A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

91.     Absent this action, many members of the class likely will not obtain redress of their injuries and EOG will reap the unjust benefits of violating the FLSA and the NMMWA.

92.     Furthermore, even if some of the members of the classes could afford individual litigation against EOG, it would be unduly burdensome to the judicial system.

93.     Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

94.     The questions of law and fact common to each of the members of the classes predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

(a)     Whether EOG employed the members of the class within the meaning of the FLSA and the NMMWA;

(b)     Whether the members of the class were improperly misclassified as contractors;

(c)     Whether EOG's decision to classify the members of the class was made in good faith;

(d)     Whether EOG's decision to not pay time and a half for overtime to the members of the class was made in good faith;

(e)     Whether EOG's violations of the FLSA was willful; and

(f)     Whether EOG's illegal pay practices were applied uniformly across the nation to all members of the class.

95.     Kimble's claims are typical of the claims of the members of the class. Kimble and the members of the classes he seeks to represent sustained damages arising out of EOG's illegal and uniform employment policy.

96.     Kimble knows of no difficulty that will be encountered in the management of this litigation that would preclude their ability to go forward as a class or collective action.

97.     Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude class or collective action treatment.

## JURY DEMAND

98.     Kimble demands a trial by jury.

## RELIEF SOUGHT

WHEREFORE, Kimble prays for judgment against EOG as follows:

(a)     For an order allowing this action to proceed as a FLSA collective action and directing notice to the class;

(b)     For an order pursuant to section 16(b) of the FLSA finding EOG liable for unpaid back wages, and an equal amount of liquidated damages, due to Kimble and the FLSA class members;

(c)     For an order designating the state law class as a class action pursuant to FED. R. CIV. P. 23;

(d)     For an order awarding Kimble and the class members the costs of this action;

(e)     For an order awarding Kimble and the class members their attorneys' fees;

(f)     For an order awarding Kimble and the class members unpaid benefits and compensation in connection with the FLSA and state law violations;

(g)     For an order awarding Kimble and the class members pre- and post-judgment interest at the highest rates allowed by law; and

(h)     For an order granting such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: */s/ Michael A. Josephson*
        Michael A. Josephson
        Texas Bar No. 24014780
        Andrew W. Dunlap
        Texas Bar No. 24078444
        **JOSEPHSON DUNLAP LAW FIRM**
        11 Greenway Plaza, Suite 3050
        Houston, Texas 77005
        713-352-1100 – Telephone
        713-352-3300 – Facsimile
        mjosephson@mybackwages.com
        adunlap@mybackwages.com

        AND

        Richard J. (Rex) Burch
        Texas Bar No. 24001807
        **BRUCKNER BURCH PLLC**
        11 Greenway Plaza, Suite 3025
        Houston, Texas 77046
        713-877-8788 – Telephone
        713-877-8065 – Facsimile
        rburch@brucknerburch.com

        **ATTORNEYS IN CHARGE FOR PLAINTIFF**