**UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO
LAS CRUCES DIVISION**

STEVEN KIMBLE,

       Plaintiff,

v.

EOG RESOURCES, INC.,

       Defendant.

Case No. 2:22-cv-00674

Jury Trial Demanded

## **INTERVENOR BEDROCK PETROLEUM CONSULTANTS, LLC'S MOTION TO COMPEL ARBITRATION**

<u>TABLE OF CONTENTS</u>

<u>Page(s)</u>

I.      INTRODUCTION ................................................................................................. 1

II.     FACTUAL BACKGROUND ............................................................................... 2

        A.      EOG Resources, Inc. and Bedrock Enter into an Agreement for Staffing of
                Independent Contractors for EOG Operations and Projects. ................................. 2

        B.      Kimble Agrees to Arbitrate All Claims Related to Any Aspect of His Agreement
                as an Independent Contractor ................................................................................ 4

        C.      Kimble Provides Water Transfer Consultant Services to EOG through Bedrock . . 6

III.    ARGUMENT AND AUTHORITIES .................................................................. 7

        A.      Standard of Review ................................................................................................. 7

        B.      The Court Should Grant the Motion to Compel Because the Kimble Agreement
                Delegates Issues of Arbitrability to the Arbitrator ................................................ 8

        C.      Even If the Court Determines the Arbitrability Issue, Kimble's Claims Against
                EOG Fall Within the Scope of the Kimble Agreement's Arbitration Provision. . 13

        D.      State Law Principles of Estoppel and Third-Party Beneficiary Require That
                Kimble's Claims Be Arbitrated. ........................................................................... 15

                1.      Equitable Estoppel Requires Kimble to Arbitrate His Claims ................. 16

                2.      The Third-Party Beneficiary Doctrine Requires that Kimble's Claims Be
                        Arbitrated. .................................................................................................. 19

IV.     CONCLUSION ................................................................................................... 22

TABLE OF AUTHORITIES

Page(s)

**Cases**

*5556 Gasmer Mgmt. LLC v. Underwriters at Lloyd's, London*,
    463 F. Supp. 3d 785 (S.D. Tex. 2020) ......................................................................16

*Altenhofen v. Southern Star Pipeline*,
    2020 WL 6877575 (W.D. Ky., Nov. 23, 2020) ....................................................7, 13

*Apollo Computer, Inc. v. Berg*,
    886 F.2d 469 (1st Cir. 1989) ....................................................................................10

*Armijo v. Prudential Ins. Co. of Am.*,
    72 F.3d 793 (10th Cir. 1995) ...................................................................................11

*AT&T Mobility LLC v. Conception*,
    563 U.S. 333, 131 S. Ct. 1740, 179 L. Ed. 2d 742 (2011) ........................................8

*Becker v. Delek US Energy, Inc.*,
    39 F.4th 351 (6th Cir. 2022) ...................................................................................10

*Belnap v. Iasis Healthcare*,
    844 F.3d 1272 (10th Cir. 2017) .............................................................................8, 9

*Bock v. Salt Creek Midstream LLC*,
    2020 U.S. Dist. LEXIS 124531 (D.N.M. July 15, 2020) ...........................................7

*Bridas S.A.P.I.C. v Government of Turkmenistan*,
    345 F3d 347 (5th Cir 2003) ....................................................................................16

*Brister v. Cheniere Energy*,
    No. 4:20-CV-1175, 2021 U.S. Dist. LEXIS 180388 (S.D. Tex. Mar. 29, 2021).................7, 12

*Casa Arena Blanca LLC v. Rainwater by Est. of Green*,
    No. 21-2037, 2022 WL 839800 (10th Cir. Mar. 22, 2022).......................................9

*Castaneda v. Volt Mgmt. Corp.*,
    No. EP-19-CV-00338-FM, 2020 U.S. Dist. LEXIS 81735 (W.D. Tex. May 8,
    2020) ...............................................................................................................17, 18, 19

*In re Citgo Petroleum Corp.*,
    248 S.W.3d 769 (Tex. App.—Beaumont 2008, pet. denied)...................................19

*ConocoPhillips Co. v. Graham*,
    No. 01-11-00503-CV, 2012 WL 1059084 (Tex. App.—Houston [1st Dist.]
    2012, no pet.) ....................................................................................................19, 20

*Contec Corp. v. Remote Sol. Co.*,
    398 F.3d 205 (2d Cir. 2005).................................................................................................10

*Davis v. USA Nutra Labs*,
    303 F. Supp. 3d 1183 (D.N.M. 2018) ..............................................................................8, 13

*Dean v. Biggs & Greenslade, P.C.*,
    No. H-21-0242, 2021 WL 2002440 (S.D. Tex. May 19, 2021)............................................17

*Dean Witter Reynolds, Inc. v. Byrd*,
    470 U.S. 213 (1985)...............................................................................................................7

*Dish Network L.L.C. v. Ray*,
    900 F.3d 1240 (10th Cir. 2018) .............................................................................................8

*Doucet v. Boardwalk Pipelines*,
    No. 4:20-CV-01793, 2021 U.S. Dist. LEXIS 236634 (S.D. Tex. Dec. 10, 2021)..............7, 12

*Eckert/Wordell Architects, Inc. v. FJM Props. of Willmar, LLC*,
    756 F.3d 1098 (8th Cir. 2014) .............................................................................................10

*Ferron v. Precision Directional Servs.*,
    No. 4:20-CV-3123, 2021 U.S. Dist. LEXIS 239322 (S.D. Tex. Sep. 21, 2021) ....................19

*Flynn v. Sanchez Oil & Gas Corp.*,
    No. SA-19-CV-00867-JKP, 2019 U.S. Dist. LEXIS 210098 (W.D. Tex. Dec. 5, 2019)........16

*Goldgroup Res., Inc. v. DynaResource de Mexico, S.A. de C.V.*,
    994 F.3d 1181 (10th Cir. 2021) .........................................................................................8, 9

*Goldsborough v. Newpark Drilling Fluids, LLC*,
    No. 2:19-cv-00309, 2020 WL 619211, at *6 (D.N.M. Feb. 10, 2020) .................................20

*Grigson v. Creative Artists Agency L.L.C.*,
    210 F.3d 524 (5th Cir. 2000) ..............................................................................................17

*Hays v. HCA Holdings, Inc.*,
    838 F.3d 605 (5th Cir. 2016) .........................................................................................16, 17

*Henry Schein, Inc. v. Archer and White Sales, Inc.*,
    139 S. Ct. 524 (2019)...............................................................................................2, 7, 8, 9

*Jody James Farms, JV v. Altman Grp., Inc.*,
    547 S.W.3d 624 (Tex. 2018)............................................................................................17, 19

*Martin v. Tap Rock Res., LLC*,
    No. 2:20-cv-170-WJ-CEG, 2022 U.S. Dist. LEXIS 16614 (D.N.M. Jan. 31, 2022).................7

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dutton*,
   844 F.2d 726 (10th Cir. 1988) ........................................................................7

*In re Merrill Lynch Trust Co. FSB*,
   235 S.W.3d 185 (Tex. 2007) .........................................................................17

*Newman v. Plains All Am. Pipeline, L.P.*,
   23 F.4th 393 (5th Cir. 2022) .....................................................................21, 22

*Reeves v. Enter. Prods. Partners, LP*,
   17 F.4th 1008 (10th Cir. 2021) ....................................................................15

*Rent-A-Ctr., W., Inc. v. Jackson*,
   561 U.S. 63, 130 S. Ct. 2772, 177 L. Ed. 2d 403 (2010) ...............................9

*Robertson v. Enbridge (U.S.) Inc.*,
   No. 2:19-CV-01080-LPL, 2020 U.S. Dist. LEXIS 66083 (W.D. Pa. Apr. 13, 2020) ..............7

*Sanchez v. Marathon Oil Co.*,
   No. H-20-1044, 2021 U.S. Dist. LEXIS 63661 (S.D. Tex. Jan. 21, 2021) ..............................17

*Sanchez v. Nitro-Lift Techs., L.L.C.*,
   762 F.3d 1139 (10th Cir. 2014) .........................................................10, 11, 13

*Snow v. Silver Creek Midstream Holdings*,
   467 F. Supp. 3d 1168 (D. Wyo. 2020)...................................................7, 12, 14

*Trujillo v. Volt Mgmt. Corp.*,
   No. 20-50526, 846 Fed. Appx. 233 (5th Cir. 2021) ....................................16

*Vaden v. Discover Bank*,
   556 U.S. 49 (2009) ......................................................................................22

*Wood v. PennTex Res., L.P.*,
   458 F. Supp. 2d 355 (S.D. Tex. 2006) .........................................................16

**Statutes**

Fair Labor Standards Act ................................................................... *passim*

Federal Arbitration Act ........................................................................7, 8

New Mexico Minimum Wage Act.........................................................1, 7

**Other Authorities**

13D CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL
   PRACTICE AND PROCEDURE § 3569 n.53 (3d ed. Apr. 2022 update) ..............................9

*JAMS Comprehensive Arbitration Rules & Procedures*, R. 11 (June 1, 2021),
  https://www.jamsadr.com/rules-comprehensive-arbitration/#Rule-11......................................9

## I.      <u>INTRODUCTION</u>

Kimble alleges that Defendant EOG Resources, Inc. ("EOG") owes him unpaid overtime wages pursuant to the Fair Labor Standards Act ("FLSA") and New Mexico Minimum Wage Act ("NMMWA") because EOG misclassified him as an independent contractor. But Kimble was not an employee of EOG. Rather, Bedrock contracted with Kimble as an independent contractor to provide water transfer consultant services to Bedrock's client – EOG. Kimble signed a Master Consulting Agreement (the "Kimble Agreement") agreeing to several terms, including that Kimble was providing his services to Bedrock and Bedrock's client (EOG) as an independent contractor and that by signing the agreement, Kimble acknowledged that he was aware that Bedrock was entering into the agreement to provide services to Bedrock's client – EOG – in furtherance of and pursuant to the terms of Bedrock's master services agreement with EOG (the "EOG Agreement"). Furthermore, Kimble agreed that all claims "arising out of or relating to any aspect of" the Kimble Agreement, including claims arising under the FLSA, would be submitted to binding arbitration. As a result, Kimble waived his right to a jury trial and agreed to arbitrate his claims for unpaid overtime "arising out of or relating to" his providing of services to Bedrock and, pursuant to the terms of the Kimble Agreement, Bedrock's client – EOG. Nevertheless, Kimble filed this lawsuit against EOG – not Bedrock – in what can only be assumed was an effort to avoid his mandatory arbitration provision.

The claims at issue in this action arise from and are directly related to Bedrock's retention of Kimble as an independent contractor assigned to Bedrock's customer, EOG. Thus, Kimble must be compelled to arbitrate his claims:

- First, the Kimble Agreement's arbitration provision contains language delegating threshold issues of arbitrability to the arbitrator. As held by the United States Supreme Court, when issues of arbitrability are delegated to the arbitration tribunal, federal

1

courts should not determine issues of arbitrability. *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 139 S. Ct. 524, 528 (2019).

- Second, the scope of the arbitration agreement extends to Kimble's claims. The plain language of the relevant provision requires that "any and all" claims, disputes, controversies, or disagreements of "any kind whatsoever" related "to any aspect" of the agreement be arbitrated. This explicitly includes FLSA claims that *could* be brought against Bedrock, which is the case here as Bedrock assigned Kimble to work on EOG projects and paid him for his services to EOG.

- Third, intertwined claims estoppel compels arbitration because Kimble's claims are intimately founded in and intertwined with both the Kimble Agreement and the EOG Agreement. Although his claims are based under the FLSA, both agreements establish Kimble's status as an independent contractor. In addition, the EOG Agreement contains indemnity provisions for FLSA claims brought by Bedrock personnel against EOG.

- Finally, arbitration must be compelled against Kimble for his claims because EOG was a third-party beneficiary to the arbitration provision in the agreement Kimble signed with Bedrock. Through the Kimble Agreement, Kimble made certain to representations and warranties directly benefiting EOG.

Thus, the Court should give effect to the Parties' agreements and compel arbitration.

## II.    FACTUAL BACKGROUND

### A.    EOG RESOURCES, INC. AND BEDROCK ENTER INTO AN AGREEMENT FOR STAFFING OF INDEPENDENT CONTRACTORS FOR EOG OPERATIONS AND PROJECTS.

Bedrock specializes in providing staffing support for customers in the oil and gas industry. (Dkt. 34-1, Declaration of Lowri Thomas ("Thomas Decl.") at ¶ 4). Under a Master Service Agreement for Well-Site Supervision Services dated September 5, 2018 (the "EOG Agreement"),[1] Bedrock provides staffing services for EOG through independent contractors. (Dkt. 34-1, Thomas Decl. ¶ 5; Dkt. 34-2, Exhibit 1-A). These Bedrock independent contractors provide services to EOG in support of its various operations or projects. (Dkt. 34-1, Thomas Decl. at ¶ 5).

The EOG Agreement governs the relationship between EOG and Bedrock and, also, sets terms for Bedrock's independent contractors that work on EOG projects and services. (Dkt. 34-2,

---

[1] The Master Service Agreement for Well-Site Supervision Services is attached as Exhibit A to the Thomas Decl. and all citations thereto will be referenced as "Exhibit 1-A".

Exhibit 1-A). Although these Bedrock independent contractors are providing services to EOG, the

EOG Agreement makes clear that Bedrock and its independent contractors are not employees of

EOG and that EOG has no control or authority over the Bedrock independent contractors assigned

to provide services to EOG:

> 6A.  In the performance of any Services by Contractor for Company, Contractor shall be conclusively deemed an independent contractor, with the authority and right to direct and control all of the details of the Services, Company only being interested in the result obtained.  However, all Services contemplated by a Work Order shall be subject to the approval of Company and shall be subject to Company's general right of inspection.  Company shall have no right or authority to supervise or give instructions to the employees, personnel, agents or representatives of Contractor, and Contractor's employees, personnel, agents
>
> or representatives at all times shall be under the direct and sole supervision and control of Contractor.  Any suggestions or directions which may be given by Company or its employees shall be given only to the superintendent or other person in charge of Contractor's crew.  It is the understanding and intention of the Parties hereto that no relationship of master and servant, or principal and agent, shall exist between Company and the employees, personnel, agents or representatives of Contractor.

(Dkt. 34-2, Exhibit 1-A at § 6A).[2] Section 10 of the EOG Agreement goes on to provide that

Bedrock will be solely responsible for the classification of the status of all personnel as well as the

recordkeeping and payment of Bedrock personnel in accordance with the FLSA:

> http://www.eogresources.com/about/governance/conduct_vendors.pdf.   Contractor agrees to comply with all laws, rules, regulations and orders, whether federal, state or local ("Laws") which are applicable to Contractor's business, equipment or personnel engaged in operations and in effect when providing Services covered by this Agreement.  CONTRACTOR HEREBY AGREES AND ACKNOWLEDGES THAT IT SHALL BE SOLELY RESPONSIBLE FOR THE CLASSIFICATION OF THE STATUS OF ALL PERSONNEL, LABOR, OR OTHER WORKERS WITH RESPECT TO THE PERFORMANCE OF ITS OBLIGATIONS TO COMPANY, INCLUDING, BUT NOT LIMITED TO, ALL DESIGNATIONS OF: (A) INDEPENDENT CONTRACTOR OR EMPLOYEE STATUS; (B) EXEMPT OR NON-EXEMPT DESIGNATIONS; AND (C) RECORDKEEPING AND PAYMENT OF CONTRACTOR'S PERSONNEL IN ACCORDANCE WITH THE FAIR LABOR STANDARDS ACT (FLSA) AND ANY APPLICABLE STATE LAW.  CONTRACTOR EXPRESSLY AGREES TO INDEMNIFY COMPANY FROM AND

(Dkt. 34-2, Exhibit 1-A, § 10) (emphasis in original).

---

[2] "Company" is defined as EOG and its wholly owned subsidiaries, and "Contractor" is defined as Bedrock. (Dkt. 34-2, Exhibit 1-A at p.1).

The EOG Agreement also included a provision requiring that Bedrock require each of its independent contractors who provided services to EOG on behalf of Bedrock to sign a waiver of class and collective action rights. (Dkt. 34-2, Exhibit 1-A at § 10A) ("Contractor agrees to secure the written consent of each and every employee, contractor, or worker performing services on behalf of Contractor under this MSA to the form attached as Exhibit C, or in a form that contains substantially similar language, which contains this same waiver or class and collective action rights.").

Finally, the EOG Agreement contains multiple indemnity provisions, including an agreement wherein Bedrock agrees to indemnify EOG against any claims, including any claims for misclassification pursuant to the FLSA or any class or collective action claims in violation of the mandatory collective action waiver:

> AND ANY APPLICABLE STATE LAW.  CONTRACTOR EXPRESSLY AGREES TO INDEMNIFY COMPANY FROM AND AGAINST ANY FINES, PENALTIES, COSTS OR EXPENSES OF ANY KIND OR CHARACTER RESULTING FROM CONTRACTOR'S FAILURE TO COMPLY WITH ALL LAWS IN EFFECT WHEN PROVIDING SERVICES COVERED BY THIS AGREEMENT, INCLUDING ALL LOSSES, DAMAGES, CLAIMS, COSTS, LIABILITIES, AND/OR OTHER EXPENSES ARISING OUT OF, OR INCURRED FOR, ANY ALLEGED OR ACTUAL MISCLASSIFICATION OR MISDESIGNATION OF ANY INDIVIDUAL WORKING WITH CONTRACTOR.  If any of the terms hereof are in conflict with any applicable Laws, the terms of

(Dkt. 34-2, Exhibit 1-A at § 10; *see also* Dkt. 34-2, Exhibit 1-A at § 10A ("Contractor expressly agrees to indemnify Company from and against any damages, claims, costs, liabilities, expenses, and attorneys' fees arising out of or incurred in connection with any claim(s) brought by any member of the Contractor Group in contravention of this provision.")).

**B.     KIMBLE AGREES TO ARBITRATE ALL CLAIMS RELATED TO ANY ASPECT OF HIS AGREEMENT AS AN INDEPENDENT CONTRACTOR.**

On or about October 12, 2019, Kimble executed a Master Consulting Agreement with Bedrock to provide water transfer consultant services as an independent contractor to Bedrock and

Bedrock's client – EOG.[3] (Dkt. 34-1, Thomas Decl. at ¶ 6; Dkt. 34-3, Exhibit 1-B). Under Section

11 of the Kimble Agreement, Kimble, referred to as "Consultant," agreed that all claims and

disputes related to or arising from the agreement be submitted to arbitration. (Dkt. 34-3, Exhibit

1-B at § 11(a)). Specifically, Section 11 provides, in pertinent part:

> ii.    ***Mandatory Arbitration for Covered Disputes.*** Company and Consultant agree
> that all Covered Disputes, as defined herein, arising out of or relating to any
> aspect of this Agreement, which may have occurred prior to or after entering into
> this Agreement, shall be submitted to binding arbitration administered by the
> JAMS in accordance with its Comprehensive Arbitration Rules and Procedures.
> Either Party may elect the Final Offer (or Baseball) Arbitration Option to the
> extent allowable by law, The term **"Covered Disputes"** shall include any claim,
> controversy, grievance, complaint, misunderstanding, or dispute arising under
> Title VII of the Civil Rights Act of 1964, the Civil Rights Acts of 1866 and 1991,
> the Age Discrimination and Employment Act of 1967, the Older Workers' Benefit
> Protection Act of 1990, the Americans with Disabilities Act of 1990, the
> Americans with Disabilities Act Amendments Act of 2008, the Family and Medical
> Leave Act of 1993, the Fair Labor Standards Act of 1938, the Equal Pay Act of
> 1963, the Employee Retirement Income Security Act of 1974. (29 U.S.C. § 1002
> et. seq.), the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA)
> (29 U.S.C. §1001, et seq.), the American Economic Recovery and Reinvestment
> Act (29 U.S.C. §1001, et seq.), the Reconstruction Era Civil Rights Act (42
> U.S.C. §§ 1981-1988), the Occupational Safety and Health Act (29 U.S.C. § 651,
> et seq.), the National Labor Relations Act (29 U.S.C. § 151, et seq.), the
> Uniformed Services Employment and Reemployment Rights Act of 1994,
> (USERRA) (38 U.S.C. § 4301, et. seq.), and/or the National Defense
> Authorization Act (42 U.S.C. §12101, et seq.).

(Dkt. 34-3, Exhibit 1-B at § 11(a)(ii)). Section 11(a)(iii) further contains a paragraph that broadly

applies the arbitration requirement to any and all other disputes relating to any aspect of the Kimble

Agreement:

> iii.    ***Other Related Disputes.*** The Parties agree that the requirement to arbitrate
> any dispute shall also apply to any and all other claims, disputes, controversies,
> or disagreements of any kind whatsoever arising out of or relating to any aspect
> of this Agreement (which may have occurred prior to or after entering into this
> Agreement) that may be otherwise be asserted against the other Party or its
> Group.

---

[3] Kimble's October 12, 2019, Master Consulting Agreement is attached as Exhibit B to the Thomas Decl. and all
citations thereto will be referenced as "Exhibit 1-B".

(Dkt. 34-3, Exhibit 1-B at § 11(a)(iii)). [4]

The Kimble Agreement also expressly gave Kimble notice that Bedrock was entering into the agreement in order for Kimble to provide services to Bedrock's client (EOG), pursuant to Bedrock's duties and obligations in the EOG Agreement:

> c.   Services to Client.  Consultant is made aware that Company has entered into a master services agreement, company agreement or work order (collectively "**MSA**") with Company's client ("**Client**") and that Company is entering into this agreement with Consultant to provide the Services to the Client in furtherance of and pursuant to Company's duties and obligations in the MSA. To the extent the MSA provides additional and/or conflicting terms to this Agreement or any SOW, the terms of this Agreement and applicable SOW shall prevail.

(Dkt. 34-3, Exhibit 1-B at § 1.c.).

## C.   KIMBLE PROVIDES WATER TRANSFER CONSULTANT SERVICES TO EOG THROUGH BEDROCK.

After executing the Kimble Agreement, Bedrock assigned Kimble to provide water transfer consultant services to EOG as an independent contractor. (Dkt. 34-1, Thomas Decl. at ¶ 10). In accordance with both the Kimble Agreement and EOG Agreement, Kimble submitted invoices to Bedrock, and Bedrock paid Kimble for his services. (Dkt. 34-1, Thomas Decl. at ¶ 7; Dkt. 34-2, Exhibit 1-A at § 4A; Dkt. 34-3, Exhibit 1-B at § 5;). Throughout his assignment to an EOG project as a water transfer consultant, EOG never made direct payments to Kimble. (Dkt. 34-1, Thomas Decl. at ¶ 7). Bedrock, not EOG, determined Kimble's rate of pay and method of pay. (Dkt. 34-1, Thomas Decl. at ¶ 7).

Although Kimble was an independent contractor assigned to work by Bedrock, On September 13, 2022, Kimble filed his Original Class and Collective Action Complaint [Dkt. 1] naming only EOG as a defendant and alleging he, and others similarly situated to him, were

---

[4] Kimble further waived his right to a jury trial and his right to participate in a class action for all disputes required to be arbitrated under Section 11. (*See* Dkt. 34-3, Exhibit 1-B at §§ 11(c), 14).

misclassified as an independent contractor and owed unpaid overtime pursuant to the FLSA and NMMWA.[5] As indicated by the numerous FLSA lawsuits subject to arbitration agreements that Plaintiff's counsel have filed in federal courts across the country, this appears to be a tactic by Plaintiff to circumvent the clear requirement that any and all claims, including FLSA claims, be arbitrated.[6] Thus, Bedrock moves to compel arbitration to enforce the mandatory arbitration provisions contained in the Kimble Agreement against Kimble.

## III.   ARGUMENT AND AUTHORITIES

### A.   STANDARD OF REVIEW.

Federal policy strongly favors arbitration. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dutton*, 844 F.2d 726, 728 (10th Cir. 1988) ("The purpose of the Arbitration Act is to compel a party to honor an agreement to arbitrate."). The Federal Arbitration Act ("FAA") requires courts to enforce any agreement by the parties that "an arbitrator rather than a court will resolve disputes arising out of the contract." *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 139 S. Ct. 524, 527 (2019). The parties may also agree that an arbitrator will resolve threshold issues related to whether the arbitration

---

[5] On January 27, 2023, Kimble notified the Court of his intent to withdraw his class and collective action claims and proceed with his case individually. *See* Dkt. 23.
[6] *See e.g.*, *Brister v. Cheniere Energy*, No. 4:20-CV-1175, 2021 U.S. Dist. LEXIS 180388 (S.D. Tex. Mar. 29, 2021) (granting motion to compel arbitration); *Doucet v. Boardwalk Pipelines*, No. 4:20-CV-01793, 2021 U.S. Dist. LEXIS 236634 (S.D. Tex. Dec. 10, 2021) (same); *Snow v. Silver Creek Midstream Holdings*, 467 F. Supp. 3d 1168 (D. Wyo. 2020) (same); *Altenhofen v. Southern Star Pipeline*, 2020 WL 6877575 (W.D. Ky., Nov. 23, 2020) (same); *see also Martin v. Tap Rock Res., LLC*, No. 2:20-cv-170-WJ-CEG, 2022 U.S. Dist. LEXIS 16614, at *10-11 (D.N.M. Jan. 31, 2022) (granting staffing company right to intervene in FLSA suit filed against its client); *Bock v. Salt Creek Midstream LLC*, 2020 U.S. Dist. LEXIS 124531, at *4 (D.N.M. July 15, 2020) (same); *Robertson v. Enbridge (U.S.) Inc.*, No. 2:19-CV-01080-LPL,  2020 U.S. Dist. LEXIS 66083, at *8 (W.D. Pa. Apr. 13, 2020) (same).

Agreement applies to a specific dispute. *Id.* In either instance, courts "must enforce arbitration agreements according to their terms" and give effect to the parties' agreement. *Id.*

Describing the FAA as "a liberal federal policy favoring arbitration," the Supreme Court has emphasized "the fundamental principle that arbitration is a matter of contract," and, accordingly, "courts must place arbitration agreements on an equal footing with other contracts . . . and enforce them according to their terms." *AT&T Mobility LLC v. Conception*, 563 U.S. 333, 131 S. Ct. 1740, 1745, 179 L. Ed. 2d 742 (2011). On a motion to compel arbitration, the role of the district court is simply to determine "(1) whether the parties have entered into a valid agreement to arbitrate, and (2) whether the dispute in question falls within the scope of that agreement." *Davis v. USA Nutra Labs*, 303 F. Supp. 3d 1183, 1189 (D.N.M. 2018).

**B.**     **THE COURT SHOULD GRANT THE MOTION TO COMPEL BECAUSE THE KIMBLE AGREEMENT DELEGATES ISSUES OF ARBITRABILITY TO THE ARBITRATOR.**

As an initial matter, the arbitrability of Kimble's wage claims is an issue to be determined in arbitration. The U.S. Supreme Court has held that when a contract delegates the question of arbitrability to an arbitrator, federal courts must respect the parties' decision and leave the issue for the arbitrator to decide. *Schein.*, 139 S. Ct. at 528. The Tenth Circuit made clear in *Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1281 (10th Cir. 2017) and, has repeatedly held, that incorporating Judicial Arbitration and Mediation Service ("JAMS") rules in which arbitrability decisions are plainly decided by the arbitrator compels finding an intent to delegate the question of arbitrability to an arbitrator. 844 F.3d at 1281 (the parties "clearly and unmistakably agreed to arbitrate arbitrability when they incorporated the JAMS Rules into the Agreement"); *see e.g. Goldgroup Res., Inc. v. DynaResource de Mexico, S.A. de C.V.*, 994 F.3d 1181, 1191 (10th Cir. 2021); *Dish Network L.L.C. v. Ray*, 900 F.3d 1240, 1246 (10th Cir. 2018).

Under the Kimble Agreement, Kimble agreed that all gateway issues of arbitrability would be submitted to arbitration. Specifically, the Kimble Agreement provides that any "grievance," "misunderstanding", "controvers[y]" or "disagreement[]" "**arising out of or relating to any aspect of this** Agreement . . . shall **be submitted to binding arbitration** administered by the JAMS in accordance with its Comprehensive Arbitration Rules and Procedures . . . ." (Dkt. 34-3, Exhibit 1-B, § 11(a)(ii) (emphasis added)). The incorporated JAMS rules provide that jurisdictional and arbitrability disputes shall be submitted to and ruled on by the arbitrator and that "[t]he [a]rbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter." JAMS, *JAMS Comprehensive Arbitration Rules & Procedures*, R. 11 (June 1, 2021), https://www.jamsadr.com/rules-comprehensive-arbitration/#Rule-11. Thus, the Kimble Agreement's express adoption of the JAMS rules is "clear and unmistakable evidence of an agreement to arbitrate arbitrability." *See Goldgroup*, 994 F.3d at 1191; *Belnap*, 844 F.3d at 1281 (concluding parties "clearly and unmistakably agreed to arbitrate arbitrability when they incorporated the JAMS Rules into the Agreement."); *Casa Arena Blanca LLC v. Rainwater by Est. of Green*, No. 21-2037, 2022 WL 839800, at *4 (10th Cir. Mar. 22, 2022) (same). As a result, the Court cannot "override the contract" and it "possesses no power to decide the arbitrability issue." *Schein,* 139 S. Ct. at 529.

The delegation also clearly applies to Kimble's claims against EOG. Questions of arbitrability include "whether the parties have agreed to arbitrate" and "whether their agreement covers a particular controversy." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 69, 130 S. Ct. 2772, 2777, 177 L. Ed. 2d 403 (2010). Another gateway issue includes "whether an arbitration clause binds persons who did not sign it." 13D CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3569 n.53 (3d ed. Apr. 2022 update); *see also Casa*

*Arena Blanca LLC v. Rainwater*, No. 21-2037, 2022 WL 839800, *5 (10th Cir. Mar. 22, 2022) (unpublished) (holding that based on the delegation provision, the question of whether an arbitration agreement should be enforced against a non-signatory as a third-party beneficiary should be decided by the arbitrator); *Becker v. Delek US Energy, Inc.,* 39 F.4th 351, 356 (6th Cir. 2022) (reiterating that "[w]hether a non-signatory can enforce a delegation clause is likewise a question of enforceability, not existence."); *Eckert/Wordell Architects, Inc. v. FJM Props. of Willmar, LLC*, 756 F.3d 1098, 1100 (8th Cir. 2014) ("Whether a particular arbitration provision may be used to compel arbitration between a signatory and a nonsignatory is a threshold question of arbitrability."); *Contec Corp. v. Remote Sol. Co.*, 398 F.3d 205, 211 (2d Cir. 2005) (holding that a signatory to a contract with an arbitration clause incorporating AAA rules could not disown its agreed-to-obligation to arbitrate the question of arbitrability); *Apollo Computer, Inc. v. Berg*, 886 F.2d 469, 472-74 (1st Cir. 1989) (holding that in light of a delegation clause in an arbitration agreement, the "arbitrator should decide whether a valid arbitration agreement exists").

The Tenth Circuit follows a three-part test to determine whether an issue falls within the scope of an arbitration clause:

> First, recognizing there is some range in the breadth of arbitration clauses, a court should classify the particular clause as either broad or narrow. Next, if reviewing a narrow clause, the court must determine whether the dispute is over an issue that is on its face within the purview of the clause, or over a collateral issue that is somehow connected to the main agreement that contains the arbitration clause. *Where the arbitration clause is narrow, a collateral matter will generally be ruled beyond its purview. Where the arbitration clause is broad, there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it.*

*Sanchez v. Nitro-Lift Techs., L.L.C.*, 762 F.3d 1139, 1146 (10th Cir. 2014) (emphasis in original) (quoting *Cummings v. FedEx Ground Package System, Inc.*, 404 F.3d 1258, 1261 (10th Cir. 2005)). Arbitration agreements applying to disputes "arising under," "in connection with," or

"relating to" the arbitration agreement are broad clauses. *Id*. at 1147. The strong presumption in favor of arbitrability applies when the arbitration clause is broad. *Id.* at 1146-47 ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."); *see also  Armijo v. Prudential Ins. Co. of Am*., 72 F.3d 793 (10th Cir. 1995) ("[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration, and thus, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."). However, a contract must be considered as a whole without focusing too strongly on any one provision or taking language out of context. *Sanchez,* 762 F.3d at 1147.

Here, the Kimble Agreement plainly states that Kimble is required to arbitrate any and all claims arising out of or relating to any aspect of the Agreement. (Dkt. 34-3, Exhibit 1-B at § 11(a)(ii)). Notably, the Kimble Agreement specifically acknowledges Kimble's agreement to provide services to Bedrock's client, EOG, on a project basis and in accordance with the EOG Agreement. (Dkt. 34-2, Exhibit 1-B at § 1(a)-(c)). Thus, the claims against EOG not only relate to the Kimble Agreement, they, in fact, arise from the agreement, which governed Kimble's assignment by Bedrock to provide water transfer consultant services to EOG. Because the arbitration provision applies to any claim or dispute relating to *any* aspect of the Kimble Agreement, the parties agreed that arbitrability, including whether claims against a non-signatory are within its scope, would be determined by the arbitrator, not this Court.

Kimble's contention that he was misclassified as an independent contractor also relates to the Kimble Agreement in which Kimble expressly agreed he was providing his services to both EOG and Bedrock as an independent contractor. (*See* Dkt. 34-3, Exhibit 1-B at § 3) ("The Parties

understand and agree that [Kimble] shall provide the Services to [Bedrock] and [EOG] as an independent contractor.")). Further, Kimble expressly agreed in the Kimble Agreement that all of his work would be performed at his sole and direct supervision and control  (Dkt. 34-3, Exhibit 1-B at § 1(d)) and that he was not entitled to any additional compensation for the services he provided under the Kimble Agreement. (*See* Dkt. 34-3, Exhibit 1-B at § 1(e)) ("all compensation rates will be the full and complete rates associated with that assignment of which [Kimble] may accept, in its sole discretion by agreeing to perform the Services. [Kimble] is not eligible for any other form of compensation relative to any accepted assignment."); Dkt. 34-3, Exhibit 1-B at § 1(e) ("The compensation paid shall constitute full payment and satisfaction for all services of every kind and character rendered hereunder. That compensation shall be in lieu of any other compensation, reimbursement, commissions, payments, fees, or other charges at any time claimed by [Kimble] from [Bedrock], whether in conjunction with Services rendered hereunder or otherwise.")). Kimble's claim clearly arises out of and relates to the Kimble Agreement and, therefore, must be arbitrated.

In cases involving similar facts, courts in this circuit and around the country have increasingly enforced arbitration agreements against non-signatories based on a delegation provision. *See e.g., Snow v. Silver Creek Midstream Holdings*, 467 F. Supp. 3d 1168, 1171 (D. Wyo.) (compelling arbitration of wage claims staffing company employee who filed suit against employer's customer); *Brister v. Cheniere Energy,* No. 4:20-CV-1175, 2021 U.S. Dist. LEXIS 180388, at *5-6 (S.D. Tex. Mar. 29, 2021) (compelling arbitration for a collective action FLSA suit involving claims against a non-employer); *Doucet v. Boardwalk Pipelines Lp*, No. 4:20-cv-01793, 2021 U.S. Dist. LEXIS 236634, at *2-3 (S.D. Tex. Dec. 10, 2021) (compelling arbitration against the plaintiff's FLSA claims on the basis that "a valid arbitration clause exists with a

delegation clause leaving the question of arbitrability to the arbitrator."); *Altenhofen v. Southern Star Pipeline*, 2020 WL 6877575, at *6 (W.D.Ky. Nov. 13, 2020) (compelling arbitration on a finding that plaintiff's FLSA claims against the non-signatory defendant are claims arising out of his employment and, as a result, are encompassed by the arbitration agreement.).[7]  Like these cases, the Kimble Agreement has a delegation provision that requires that issues of arbitrability be determined by the arbitrator. Thus, this motion should be granted to give effect to the Kimble Agreement's arbitration provision delegating any threshold arbitrability issues to the arbitrator.

C.   **EVEN IF THE COURT DETERMINES THE ARBITRABILITY ISSUE, KIMBLE'S CLAIMS AGAINST EOG FALL WITHIN THE SCOPE OF THE KIMBLE AGREEMENT'S ARBITRATION PROVISION.**

Even if the Court determines the issue of arbitrability, the language of the Kimble Agreement reveals that Kimble agreed to arbitrate his claims against EOG. Kimble may argue that the arbitration provision does not apply to his claims against EOG, but the broad arbitration provision clearly applies here. In determining whether claims are subject to arbitration, New Mexico District Courts look to answer two straightforward questions: "(1) whether the parties have entered into a valid agreement to arbitrate, and (2) whether the dispute in question falls within the scope of that agreement." *Davis*, 303 F. Supp. 3d at 1189. The Tenth Circuit has held that acknowledging an arbitration provision is ambiguous answers the question of arbitrability because all ambiguities are resolved in favor of arbitration. *Sanchez*, 762 F.3d at 1146. An order to arbitrate should not be denied unless "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Id.* at 1147-48 (quoting *Local 5-857 Paper, Allied—Industrial, Chemical & Energy Workers International Union v. Conoco, Inc.*, 320 F.3d 1123, 1126 (10th Cir. 2003)). The Kimble Agreement and arbitration provision

---

[7] Notably, the plaintiffs in all of these cases were also represented by Kimble's counsel and their arguments that the plaintiffs did not agree to arbitrate with the defendant nonsignatory were rejected by each of these courts.

contained therein is not ambiguous however, even if it were, it is a broad provision so it is interpreted in favor of arbitration. *See Snow*, 467 F. Supp. 3d at 1177 (holding agreement to "arbitrate any disputes arising out of his employment" with staffing company was unambiguous as a matter of law as to compel claims against staffing company's client to arbitration) (applying Wyoming law).

Like in this case, the plaintiff in the *Snow* case signed an agreement with a staffing agency to perform inspection services for Applied's oil and gas client,[8] Silver Creek, as an independent contractor. *Id*. at 1170. Applied bargained for and Snow agreed "to arbitrate all claims that have arisen or will arise our of [his] employment." *Id*. Snow sued Silver Creek, alleging it was Snow's employer and owed him unpaid overtime wages, but not Applied. *Id*. Applied intervened and sought to compel Snow to arbitrate his FLSA claims because, as the court noted, "Mr. Snow's selective pleading was drafted to avoid the arbitration agreement." *Id*. at 1170-71. But, because the arbitration provision expressly applied to "all claims that have arisen or will arise out of [Snow's] employment," and the non-signatory was a client or customer of plaintiff's employer whose relationship with the plaintiff was formed as a direct result of the agreement, the Wyoming District Court found under Tenth Circuit precedent there was a valid agreement to arbitrate plaintiff's claims against the non-signatory defendant. *Id.* at 1178. Further, the court found the language of the arbitration provision was sufficiently broad to encompass the plaintiff's claims for unpaid overtime against the non-signatory defendant. *Id*.

As in *Snow*, Kimble should be required to honor his agreement to arbitrate "all other claims, disputes, controversies, or disagreements of any kind whatsoever arising out of or relating to any

---

[8] Notably, the Plaintiff is *Snow* was represented by Josephson Dunlap LLP and Bruckner Burch PLLC – the same counsel representing Plaintiff here.

aspect of" the Kimble Agreement, including but not limited to his FLSA claims currently pending against EOG in this Court.

The Kimble Agreement states that Kimble "is made aware that [Bedrock] has entered into a master services agreement [] with [Bedrock's] client." (Dkt. 34-3, Exhibit 1-B at § 1). And once hired by the client, Kimble "agree[d] to provide the Services to [EOG] in furtherance of and pursuant to [Bedrock's] duties and obligations in the MSA." (Dkt. 34-3, Exhibit 1-B at § 1). Thus, the plain language of the Kimble Agreement shows that Kimble contemplated duties and obligations owed to and claims he may have against Bedrock's customer, EOG. Furthermore, the scope of the arbitration provision in the Kimble Agreement is broad and applies to "claims, disputes, controversies, or disagreements of any kind whatsoever arising out of or relating to any aspect of this Agreement [] that may [] otherwise be asserted against" Bedrock. (Dkt. 34-3, Exhibit 1-B at § 11(a)(iii)). This provision not only applies to claims brought against Bedrock but also applies to claims that could be asserted against it. Kimble's claims, which challenge his classification as an independent contractor and allege that he is entitled to overtime payments under the FLSA, are directly related to the Kimble Agreement. Because Kimble could have brought the FLSA claims in this lawsuit against Bedrock, the entity that determined his classification as an independent contractor and that paid his invoices for services rendered to EOG, his claims fall within the scope of the arbitration provision.

**D.      STATE LAW PRINCIPLES OF ESTOPPEL AND THIRD-PARTY BENEFICIARY REQUIRE THAT KIMBLE'S CLAIMS BE ARBITRATED.**

The scope of an arbitration agreement, including the question of who it binds, is a question of state contract law. *Reeves v. Enter. Prods. Partners, LP*, 17 F.4th 1008, 1011 (10th Cir. 2021) (citing *Arthur Andersen L.L.P. v. Carlisle*, 556 U.S. 624, 630-31, 129 S. Ct. 1896, 173 L. Ed. 2d

832 (2009)). Traditional principles of state contract law require that Kimble be compelled to arbitrate his claims against EOG, a non-signatory.

The Kimble Agreement contains a choice of law provision applying the laws of the State of Texas. (Dkt. 34-3, Exhibit 1-B at §§ 11, 13). Under Texas law, a contract may be enforced by or against nonparties. *Flynn v. Sanchez Oil & Gas Corp.*, No. SA-19-CV-00867-JKP, 2019 U.S. Dist. LEXIS 210098, at *8 (W.D. Tex. Dec. 5, 2019) (quoting *Arthur Andersen*, 556 U.S. at 631). The Fifth Circuit recognizes the following state law theories under which non-signatories to an arbitration agreement may be bound to its terms: (1) assumption; (2) agency; (3) veil piercing/alter ego; (4) estoppel; (5) third-party beneficiary; and (6) incorporation by reference. *Bridas S.A.P.I.C. v Government of Turkmenistan*, 345 F3d 347, 355-56 (5th Cir 2003); *5556 Gasmer Mgmt. LLC v. Underwriters at Lloyd's, London*, 463 F. Supp. 3d 785, 791 (S.D. Tex. 2020). Indeed, under Texas law, it is easier for a non-signatory to compel a signatory to arbitration than vice versa. *Bridas*, 345 F.3d at 361 ("It is more foreseeable, and thus more reasonable, that a party who has actually agreed in writing to arbitrate claims with someone might be compelled to broaden the scope of his agreement to include others."); *Wood v. PennTex Res., L.P.*, 458 F. Supp. 2d 355, 366 (S.D. Tex. 2006) (citation omitted).

Here, the doctrines of intertwined claims estoppel and third-party beneficiary theories require that the arbitration provision in the Kimble Agreement apply to Kimble's claims.

1. Equitable Estoppel Requires Kimble to Arbitrate His Claims.

The Fifth Circuit has recognized that a signatory to an arbitration agreement, such as Kimble, can be compelled to arbitrate a case with a non-signatory, such as EOG, under the theory of intertwined claims estoppel. *Hays v. HCA Holdings, Inc.*, 838 F.3d 605, 609-10 (5th Cir. 2016). "Intertwined claims estoppel involves compel[ing] arbitration when a nonsignatory defendant has a close relationship with one of the signatories and the claims are intimately founded in and

intertwined with the underlying contract obligations." *Id.* (internal quotation marks and citation omitted); *Trujillo v. Volt Mgmt. Corp.*, No. 20-50526, 846 Fed. Appx. 233, 237 (5th Cir. 2021). The purpose of intertwined claims estoppel is to prevent a "part[y] to an arbitration agreement" from "evad[ing] arbitration through artful pleading." *In re Merrill Lynch Trust Co. FSB,* 235 S.W.3d 185, 188 (Tex. 2007); *see also Hays*, 838 F.3d at 609 (rejecting plaintiff's attempted "strategic pleading intended to avoid the arbitral forum"). In other words, "[i]ntertwined claims estoppel estop[s] signatory plaintiffs from avoiding arbitration with nonsignatories when the relationship between the parties is such that it would be unfair not to compel arbitration." *Dean v. Biggs & Greenslade, P.C.*, No. H-21-0242, 2021 WL 2002440, at *7 (S.D. Tex. May 19, 2021) (internal quotation marks omitted; granting motion to compel arbitration).

     As such, the "linchpin for equitable estoppel is equity—fairness." *Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524, 528 (5th Cir. 2000). The relationship between the parties must be so developed that it would be "unfair" not to compel arbitration. *Jody James Farms, JV v. Altman Grp., Inc.,* 547 S.W.3d 624, 639 (Tex. 2018). Here, Kimble should be compelled to arbitrate his claims under intertwined claims estoppel because EOG has a close relationship with Bedrock and Kimble's claims are intertwined with the obligations underlying the Kimble Agreement. *See Sanchez v. Marathon Oil Co.*, No. H-20-1044, 2021 U.S. Dist. LEXIS 63661, at *14-15 (S.D. Tex. Jan. 21, 2021), report and recommendation adopted, No. 4:20-CV-1044, 2021 U.S. Dist. LEXIS 61344 (S.D. Tex., Mar. 30, 2021) (applying intertwined claims estoppel between a staffing company, Bedrock, and its client; *Castaneda v. Volt Mgmt. Corp.,* No. EP-19-CV-00338-FM, 2020 U.S. Dist. LEXIS 81735, at *14-15 (W.D. Tex. May 8, 2020) (applying intertwined claims estoppel where there was a close relationship between two unrelated entity defendants who were co-employers of the plaintiff).

There is a close relationship between Bedrock, Kimble, and EOG to trigger the application of intertwined claims estoppel. Bedrock contracted with Kimble to provide water transfer consultant services to EOG, and Kimble expressly agreed that he would provide services "in furtherance of and pursuant to [Bedrock's] obligations in the MSA" between Bedrock and EOG. (Dkt. 34-3, Exhibit 1-B at § 1.c). Kimble also expressly agreed that in providing services pursuant to the Kimble Agreement he would adhere to EOG's rules, regulations, and policies while on EOG's worksite and ensure others adhere to EOG's rules, regulations, and policies. (Dkt. 34-3, Exhibit 1-B at § 2.b). Most importantly, without Kimble's voluntary agreement to the terms of the Kimble Agreement, Bedrock would not have assigned Kimble to work as an independent contractor for EOG. (Dkt. 34-1, Thomas Decl. at ¶ 8). Furthermore, the EOG Agreement may require that Bedrock indemnify EOG should Kimble succeed on his claims. (Dkt. 34-2, Exhibit 1-A, § 10). For these reasons, Kimble's claims are inextricably intertwined with the Kimble Agreement and the EOG Agreement.

Kimble's lawsuit also implicates the equity concerns paramount to intertwined claims estoppel. Kimble should not be allowed to avoid an arbitration provision he agreed to by suing only EOG. This point is illustrated by *Castaneda v. Volt Mgt. Corp.*, EP-19-CV-00338-FM, 2020 U.S. Dist. LEXIS 81735, at *14-15 (W.D. Tex. May 8, 2020), where the plaintiff claimed that she could not be compelled to arbitrate her employment dispute against a non-signatory to the arbitration agreement. Yet, she had asserted the same claims with the same supporting facts against both the non-signatory she performed services for and the signatory who employed her. *Id.* Her claim was "rooted in the terms of her employment, subject to the employment application and employment agreement," which contained the arbitration provision. *Id.* Noting that her case "implicates the judicial concern underpinning intertwined claims estoppel—that plaintiff may use

strategic pleading to avoid arbitration by bringing suit against a nonsignatory," the court applied equitable estoppel. *Id.* Had she sued the employer alone, "the arbitrability of the dispute would have been clear." *Id.* Similarly, had Kimble brought his claims against Bedrock, the arbitrability of the dispute would have been clear—Kimble would be required to arbitrate his claims. And if Kimble is not compelled to arbitrate his claims, Kimble will have effectively, and inequitably, dodged the arbitration provision in the Kimble Agreement.

2.   The Third-Party Beneficiary Doctrine Requires that Kimble's Claims Be Arbitrated.

Alternatively, the Court should compel arbitration because Kimble agreed to arbitrate his claims for the benefit of Bedrock's customer, EOG, making EOG a third-party beneficiary to the Kimble Agreement's arbitration provision. Under Texas law, a non-signatory to an arbitration agreement can be compelled to arbitrate as a third-party beneficiary to the agreement. *Ferron v. Precision Directional Servs.,* No. 4:20-CV-3123, 2021 U.S. Dist. LEXIS 239322, at *11 (S.D. Tex. Sep. 21, 2021) (citing *First Bank v. Brumitt*, 519 S.W.3d 95, 102 (Tex. 2017)). Under the third-party beneficiary theory, the agreement must show that the parties to the contract (1) intended to secure a benefit to the third-party and (2) entered into the contract directly for its benefit. *ConocoPhillips Co. v. Graham,* No. 01-11-00503-CV, 2012 WL 1059084, at *14-15 (Tex. App.— Houston [1st Dist.] 2012, no pet.) (citation omitted). The benefit must be more than incidental and the intent to confer the benefit to the third party must be "clearly and fully spelled out." *Jody James Farms, JV v. Altman Group, Inc*., 547 S.W.3d 624, 635 (Tex. 2018) (citation omitted).

To determine whether the parties intended to benefit a third-party, courts review the entire agreement and give effect to all of its provisions. *Graham,* 2012 WL 1059084, at *15; *In re Citgo Petroleum Corp*., 248 S.W.3d 769, 776 (Tex. App.—Beaumont 2008, pet. denied). The third-party beneficiary does not need to be identified by name in the agreement but "may be identified [] by class or category of persons, all of whom may not be known to the contracting parties at the time

19

of execution." *Graham*, 2012 WL 1059084, at *16 (involving agreement language referring to the third-party beneficiary as a "client").

In a recent case involving similar facts, the court in *Goldsborough v. Newpark Drilling Fluids, LLC* found that an agreement between the plaintiff independent contractor and the staffing company made the defendant client a third-party beneficiary under Texas law. *Goldsborough v. Newpark Drilling Fluids, LLC*, No. 2:19-cv-00309 KWR/GBW, 2020 WL 619211, at *6 (D.N.M. Feb. 10, 2020) (applying Texas law). Finding that the agreement's purpose was to engage the plaintiff to perform an assignment on a project for the staffing company's client, the court noted that the agreement's plain language appeared to govern the relationship between the plaintiff and the client. *Id*. The agreement provided that the plaintiff was an independent contractor that would comply with the client's policies, keep the client's non-public information confidential, perform to the best of his abilities on the client's wellsite, comply with safety regulations, and agree to arbitrate claims against the staffing company and its client. *Id.* at *6-7. Reviewing these provisions as a whole, the court concluded that the agreement expressly granted the client the benefit of arbitration and was intended to directly benefit the client. *Id.* at *7-9. Thus, the client was a third-party beneficiary under Texas law. *Id.* at 10-11.

Like the client in *Goldsborough*, EOG is a third-party beneficiary to the Kimble Agreement because the agreement directly provided EOG with numerous benefits. The Kimble Agreement required Kimble become familiar with and adhere to EOG's rules, regulations, and policies while on EOG's worksite and ensure others adhere to EOG's rules, regulations, and policies. (Dkt. 34-3, Exhibit 1-B at § 2.b). The Kimble Agreement also required Kimble's compliance with EOG's various safety and training requirements and policies. (Dkt. 34-3, Exhibit 1-B at § 2.c). Like *Goldsborough*, Section 7 of the Kimble Agreement prohibited the disclosure of EOG (and

Bedrock's) Confidential Information, as defined therein. (Dkt. 34-3, Exhibit 1-B at § 7) . Moreover, Kimble expressly agreed to certain indemnity obligations in the event he breached any of his representations and warranties found in the Kimble Agreement. (Dkt. 34-3, Exhibit 1-B, §§ 1(c), 2(b)-(c), 4(a)-(j), 11). Thus, by signing the Kimble Agreement, Kimble expressly agreed to be bound by certain legal duties, obligations, and warranties with respect to the performance of his services to EOG, which EOG could rely upon to assert a breach of contract claim against Kimble in the event he ever breached the provisions in the Kimble Agreement.

Kimble may attempt to rely on a recent Fifth Circuit case, *Newman v. Plains All Am. Pipeline, L.P.*, 23 F.4th 393 (5th Cir. 2022), to argue that his claims are not within the scope of the Kimble Agreement. But the Court should reject this argument. The *Newman* case is distinguishable and involves different contractual language than presented here. Regardless, the law relied on in *Newman* actually supports compelling arbitration here.

In *Newman,* the plaintiffs claimed to be employees of Defendant Plains All American Pipeline, L.P. when they were actually employed by a staffing company, Cypress. *Id*. at 394. The arbitration provision in that case was found in the employment agreement between Newman and Cypress. *Id.* In its motion to compel arbitration, Plains argued that it was a third-party beneficiary to the employment agreement. *Id*. Holding that the agreement must confer Plains the status of a claimant in the event of a breach in order to make him a third-party beneficiary, the Fifth Circuit rejected the argument. *Id.* at 402. The court stated that the relevant agreement "did not clearly and fully spell out that Plains could take legal action if either Newman or Cypress breached its terms." *Id.* at 402.

A comparison of the arbitration language in *Newman* and the Kimble Agreement, shows that the facts in *Newman* are distinguishable. Under Section 1.c of the Kimble Agreement, Kimble

acknowledged that he was providing services to Bedrock's client (EOG) in furtherance of and pursuant to Bedrock's duties and obligations in the EOG Agreement. (Dkt. 341-3, Exhibit 1-B at § 1.c). A similar provision was not in the arbitration agreement at issue in *Newman*. Moreover, there was no provision in *Newman* similar to Section 3 and Section 4.a of the Kimble Agreement wherein Kimble expressly acknowledges, represents, and warrants that he is providing services to Bedrock *and* EOG as an independent contractor. (Dkt. 341-3, Exhibit 1-B at §§ 3, 4.a).  Also missing in *Newman* was any provision like that in Section  1.e of the Kimble Agreement wherein Kimble expressly promised to hold both Bedrock and EOG harmless and indemnify them for any claim for additional compensation for the services performed pursuant to the agreement:

> Services rendered hereunder or otherwise. Consultant shall hold both Company and Client harmless and indemnify them from any claim related to any other additional compensation not expressly agreed to in writing by the Parties.

(Dkt. 34-3, Exhibit 1-B at § 1.e). Finally, another key difference is that while "Client" is mentioned approximately thirty times in the Kimble Agreement, the client was mentioned only a handful of times in the Newman agreement. These material distinctions distinguish this case from Newman. Instead, just as in Goldsborough, EOG should be determined to be a third-party beneficiary to the Kimble Agreement.

## IV.   <u>CONCLUSION</u>

Federal policy favors enforcing arbitration agreements. *Vaden v. Discover Bank*, 556 U.S. 49, 58 (2009). As a condition of his retention with Bedrock as an independent contractor and assignment to EOG, Kimble signed the Kimble Agreement that broadly required arbitration of any claims, and specifically required arbitration of FLSA claims. After he signed the Kimble Agreement, Bedrock (not EOG) classified him as an independent contractor and compensated Kimble for his services that he provided to EOG. Yet, Kimble asserts claims of unpaid overtime arising out of his retention against EOG – not Bedrock. Kimble's maneuver is an obvious attempt

to avoid arbitration of his claims that should not countenanced. For the foregoing reasons, Bedrock moves to compel Kimble's claims to arbitration and stay the proceedings pending arbitration, and grant Bedrock all other relief, at law or in equity, to which Bedrock may be justly entitled.

**Dated: July 6, 2023**                  Respectfully submitted,

                                         **BAKER & HOSTETLER LLP**

                                         By:      */s/ Ashlee Cassman Grant*
                                         Ashlee Cassman Grant, *Attorney-in-Charge*
                                         Federal Bar ID 22-268
                                         Amber L. Buckheister
                                         Federal Bar ID 22-254
                                         811 Main Street, Suite 1100
                                         Houston, TX  77002
                                         Phone: (713) 646-1364
                                         agrant@bakerlaw.com

                                         **ATTORNEYS FOR BEDROCK PETROLEUM CONSULTANTS, LLC**

<u>**CERTIFICATE OF CONFERENCE**</u>

The undersigned hereby certifies that counsel for Bedrock conferred with Plaintiff's counsel about the relief sought in the above Motion and Plaintiff's counsel is opposed to the relief sought.

                    */s/ Ashlee Grant*

<u>**CERTIFICATE OF SERVICE**</u>

In accordance with the Federal Rules of Civil Procedure, I hereby certify that on July 6, 2023, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send notice of this filing to all counsel of record.

                    */s/ Ashlee Grant*

23