IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

STEVEN KIMBLE,

    Plaintiff,

v.

                                      Case No. 2:22-cv-00674-MLG-DLM

EOG RESOURCES, INC.,

    Defendant.

**MEMORANDUM OPINION AND ORDER DENYING
INTERVENOR'S MOTION TO COMPEL ARBITRATION[1]**

    Intervenor Bedrock Petroleum Consultants, LLC ("Bedrock"), provides staffing support for its clients who operate in the oil and gas exploration and production industries. Doc. 59 at 8. Defendant EOG Resources, Inc. ("EOG"), is one such client. *See* Doc. 34-2 at 2. Plaintiff Steven Kimble provided water transfer consulting services for EOG from September 2019 through October 2020. Doc. 34-3 at 3, 11; Doc. 1 at 2 ¶ 9. Whether Kimble provided those services as an independent contractor for Bedrock or as EOG's employee is a disputed issue of fact. Doc. 1 at 4 ¶ 24; Doc. 12 at 7 ¶ 27. However, Kimble's pleading repeatedly alleges that he worked as an EOG employee and that EOG dictated his pay and work schedule. Doc. 1 at 3 ¶ 23; *id.* at 4 ¶ 24; *id.* at 5 ¶ 39.

    The gravamen of Kimble's suit is founded on allegations that EOG paid him a flat sum for each day irrespective of the number of hours he worked. Kimble seeks to recover unpaid wages from EOG pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a), and the New Mexico Minimum Wage Act ("NMMWA"), NMSA 1978, § 50-4-19, *et seq*. Doc. 1 at 1 ¶ 1. EOG

---

[1] The Court held a hearing in this matter, but Kimble's lawyer failed to appear. Doc. 69 (Clerk's Minutes).

1

is the lone defendant named in Kimble's lawsuit; the complaint addresses EOG exclusively. Nevertheless, Bedrock has intervened in this litigation claiming that Kimble is obligated to arbitrate his dispute with EOG. *See generally* Doc. 34. In support of its argument, Bedrock points to a contract it entered with Kimble (hereinafter, the "Agreement"),[2] Doc. 34-3, whereby Kimble agreed to work for one of Bedrock's "clients." *Id.* at 2. That contract included an arbitration agreement providing as follows:

> [Bedrock] and [Kimble] agree that all Covered Disputes . . . arising out of or relating to any aspect of this Agreement, which may have occurred prior to or after entering into this Agreement, shall be submitted to binding arbitration . . . .

*Id.* at 8 ¶ 11(a)(ii).[3] Bedrock asserts that this provision must be extended to Kimble's lawsuit against EOG and filed a motion seeking judicial imprimatur and enforcement of its position. *See* Doc. 59 at 8. That is the matter at issue here.

## PROCEDURAL POSTURE

After Kimble filed suit, Bedrock intervened in this litigation and subsequently filed the

---

[2] There is also an agreement between Bedrock and EOG titled "Master Service Agreement." Doc. 34-2. This contract set the terms for Bedrock's independent contractors who worked on EOG projects and services. It made clear that Bedrock and the independent contractors it staffs for EOG are not employees of EOG. *Id.* at 6-7 ¶ 6A. Bedrock also agreed to indemnify EOG against any claims resulting from Bedrock's failure to comply with all laws in effect when providing services covered by the agreement. *Id.* at 10 ¶ 10. Kimble is not a party to that agreement, and he did not sign that document.

[3] The Agreement contains another provision titled "Other Related Disputes." *Id.* at 8 ¶ 11(a)(iii). That provision states that Bedrock and Kimble "agree that the requirement to arbitrate any dispute shall also apply to any and all other claims, disputes, controversies, or disagreements of any kind whatsoever arising out of or relating to any aspect of this Agreement (which may have occurred prior to or after entering into this Agreement) that may be otherwise be [sic] asserted against the other Party or its Group." *Id.* The meaning of the word "Group" is unclear from the document, which does not provide a definition of the term.

2

motion presently at issue.[4] Doc. 56; Doc. 59. Bedrock makes several arguments, including the following: the Agreement delegates issues of arbitrability to the arbitrator; even if the Court determines that issue, Kimble's claims against EOG fall within the scope of the arbitration agreement; and state law principles of estoppel and third-party beneficiary compel Kimble's claims to be arbitrated. Doc. 59 at 14-21. Kimble opposes arbitration, asserting that there is no dispute between Kimble and Bedrock and, thus, the arbitration provision has no force. Doc. 63 at 1. Kimble's specific contentions are that Bedrock lacks standing to force Kimble and EOG to arbitrate; there is no binding agreement between Kimble and EOG to arbitrate; and Bedrock recently lost on this same issue in the Southern District of Texas. *Id.* at 6-27. EOG has never asserted a position one way or the other notwithstanding that it is the sole named defendant in Kimble's lawsuit.

## DISCUSSION

### I.     Arbitrability

The Court begins by considering who should decide arbitrability as between Kimble and EOG: the Court or the arbitrator? In resolving that question, the Court is mindful of controlling precedent from the United States Supreme Court instructing that "[u]nless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986). In this case, there is no agreement between Kimble and EOG—let alone a delegation clause—so it cannot be said that they "clearly and unmistakably" agreed to arbitrate. *See Oldham v. Nova Mud, Inc.*, No. 2:20-cv-01166, 2022 U.S. Dist. LEXIS 224206, at *10

---

[4] EOG does not oppose the motion and requests that the Court also stay the proceedings pending the resolution of arbitration. Doc. 62 at 2; *see also* Doc. 37.

(D.N.M. Dec. 13, 2022) (finding the parties did not "unequivocally agree[] to arbitrate the question of arbitrability of Plaintiff's remaining claims"). The question is therefore a matter for this Court.[5]

## II. Standing

Another prefatory issue is the question of standing. Kimble asserts that Bedrock does not have standing to force him to arbitrate his claims with EOG as Bedrock has not shown an injury in fact or that it is an aggrieved party. Doc. 63 at 6-9 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). But Kimble's argument conflates standing to enforce an arbitration agreement with Article III constitutional standing—the former being a contractual right and the latter being jurisdictional. *See In re Prudential Ins. Co. of Am. Sales Prac. Litig. All Agent Actions*, 133 F.3d 225, 229 (3d Cir. 1998) (referring to the contractual standing of a party to arbitrate its claims); *Paul Revere Variable Annuity Ins. Co. v. Zang*, 248 F.3d 1, 5 n.2 (1st Cir. 2001) (considering what parties have the right to compel arbitration based on standing principles). As Bedrock is an express party to the Agreement, it possesses a contractual right (and thus standing) to invoke the arbitration provision.[6] *See* Doc. 34-3 at 8 ¶ 11(a)(ii); *see also Britton v. Co-Op Banking Grp.*, 4 F.3d 742, 744 (9th Cir. 1993) ("An entity that is neither a party to nor agent for nor beneficiary of the contract lacks standing to compel arbitration.").

## III. Arbitration Between Kimble and EOG

While Bedrock may have standing to litigate the arbitration provision, the question of

---

[5] By contrast, Kimble and Bedrock appear to have unequivocally agreed to arbitrate the question of arbitrability because the drafter incorporated the JAMS Rules—an external set of arbitration provisions—into the Agreement. *See* Doc. 34-3 at 8 ¶ 11(a)(ii); *see also Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1281 (10th Cir. 2017) (holding the parties "clearly and unmistakably agreed to arbitrate arbitrability when they incorporated the JAMS Rules into the Agreement"). But that fact has no import here when deciding the issue of arbitrability as between Kimble and EOG.

[6] Neither Kimble nor Bedrock argues the invalidity of the Agreement or the arbitration provision itself.

whether it is controlling in a lawsuit between Kimble and EOG is another matter. Indeed, Bedrock's position stands on shaky ground given that Kimble did not sign any employment agreement with EOG; he did not execute an arbitration agreement with EOG; and EOG has not filed anything with the Court suggesting it seeks arbitration of Kimble's claims. Moreover, the Agreement "omits any reference to clients in the arbitration provision." *Pogue v. Chisholm Energy Operating, LLC*, No. 2:20-cv-00580, 2021 U.S. Dist. LEXIS 49593, at *22 (D.N.M. Mar. 16, 2021). As other courts have noted, "this omission is regarded as purposeful and from which [the Court] can reasonably infer that the parties did not intend that the non-signatory be a beneficiary of the arbitration clause." *Id.* (original internal brackets and quotation marks omitted). Accordingly, the Court finds that Kimble's claims against EOG do not fall within the express language of the Agreement's arbitration provision.

## IV. Estoppel and Third-Party Beneficiary

Bedrock also maintains that equitable estoppel applies, and Kimble must therefore arbitrate his claims with EOG. Doc. 59 at 21. Under this theory, also known as an "alternative estoppel theory," "non-signatories can successfully compel arbitration when (1) they have a close relationship with a signatory to a contract with an arbitration agreement and (2) the claims are intimately founded in and intertwined with the underlying contract obligations."[7] *Jody James Farms v. Altman Grp., Inc.*, 547 S.W.3d 624, 639 (Tex. 2018) (internal quotation marks omitted). The doctrine is "carefully limited" and "does not 'mean that whenever a relationship of any kind may be found among the parties to a dispute and their dispute deals with the subject matter of an

---

[7] The Texas Supreme Court has yet to formally adopt the doctrine. *In re Merrill Lynch Tr. Co. FSB*, 235 S.W.3d 185, 193-94 (Tex. 2007). The Fifth Circuit Court of Appeals, however, recognizes equitable estoppel in the arbitration context and has predicted Texas state courts would do the same. *Newman v. Plains All Am. Pipeline, L.P.*, 23 F.4th 393, 404 (5th Cir. 2022).

arbitration contract made by one of them, that party will be estopped from refusing to arbitrate.'" *Id.* (quoting *Sokol Holdings, Inc. v. BMB Munai, Inc.*, 542 F.3d 354, 359 (2d Cir. 2008)). Rather, "alternative estoppel requires not only a dispute intertwined with the contract but also a relationship between the parties that developed in a manner that makes it 'unfair' *not* to compel arbitration." *Id*.

Here, there is no formal corporate affiliation between the entities that would otherwise bridge that relationship. *See id.* at 640 (finding no close relationship between the signatory and non-signatory where the parties were "independent and distinct entities" in contrast to having "some corporate affiliation"). EOG is merely Bedrock's client. Bedrock argues that the indemnity provision somehow implicates such an affiliation, but that position is contrary to decisional authority. *See* Doc. 59 at 24; *Newman*, 23 F.4th at 407 ("A reasonable signatory to an arbitration agreement would not foresee that a corporate subsidiary—with which he has no affiliation—can unilaterally change his arbitration rights merely by agreeing to indemnify a client.").

And even if a sufficient connection existed, the claims are not intimately founded in and intertwined with the underlying contract obligations. Kimble's FLSA and NMMWA claims do not depend on the underlying contract obligations. Rather, Kimble's claims are "statutory and arise under . . . federal [and state] law, and not the contract." *Flynn v. Sanchez Oil & Gas Corp.*, No. SA-19-CV-00867, 2019 U.S. Dist. LEXIS 210098, at *17 (W.D. Tex. Dec. 5, 2019). Thus, the determination of whether Kimble

> is ultimately entitled to overtime compensation as an employee under the FLSA does not depend on the terms of [Kimble's] employment agreement [with Bedrock]. Rather it turns on the economic realities of [Kimble's] relationship with [EOG]. . . . [N]o matter what was promised or documented [in the Agreement], what will be dispositive under the FLSA will be how the parties in reality behaved.

*Id.*; *see also MPII, Inc. v. Hidalgo*, No. 13-23-00297, 2024 Tex. App. LEXIS 2004, at *13 (Tex.

6

App. Mar. 21, 2024) ("[I]f the facts alleged in support of the claim stand alone, are completely independent of the contract, and the claim could be maintained without reference to the contract, the claim is not subject to arbitration.") (citation omitted).

Bedrock's claims that EOG is a third-party beneficiary of the arbitration clause is similarly unavailing. *See* Doc. 59 at 26-28. To prevail on its argument, Bedrock must overcome the "presumption against conferring third-party-beneficiary status on noncontracting parties." *S. Tex. Water Auth. v. Lomas*, 223 S.W.3d 304, 306 (Tex. 2007) (citing *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 652 (Tex. 1999)). That presumption means that "[Bedrock] may enforce a contract to which it is not a party if the parties to the contract *intended* to secure a benefit to [EOG] and entered into the contract directly for [EOG's] benefit." *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 677 (Tex. 2006) (emphasis added). "The intent to confer a direct benefit upon a third party 'must be clearly and fully spelled out or enforcement by the third party must be denied'" *Lomas*, 223 S.W.3d at 306 (quoting *MCI Telecomms. Corp.*, 995 S.W.2d at 651). Incidental benefits are insufficient to "confer the right to enforce the contract." *Id*.

Bedrock argues that "Kimble agreed to arbitrate his claims for the benefit of [its] customer, EOG, making EOG a third-party beneficiary" to the Agreement. Doc. 59 at 25. The Court is unpersuaded.[8]

To begin with, the contractual language itself does not evince the parties' intention to have EOG benefit from the arbitration agreement. EOG is not mentioned either in name or as a "client" or "customer" in the provision itself. *Compare Flynn*, 2019 U.S. Dist. LEXIS 210098, at *4

---

[8] Bedrock relies on *Goldsborough v. Newpark Drilling Fluids, LLC*, No. 2:19-cv-00309, 2020 U.S. Dist. LEXIS 24090, at *6 (D.N.M. Feb. 10, 2020), to assert that the Agreement directly provided EOG with "numerous benefits" therefore conferring third-party status. Doc. 59 at 26. That case is distinguishable from the instant matter for the reasons addressed above.

(finding no third-party beneficiary conferral where "[t]here is no reference whatsoever to any third-party customer in the arbitration provision of the Employment Agreement"), *with Goldsborough*, 2020 U.S. Dist. LEXIS 24090, at *7 (finding third-party beneficiary status where the arbitration agreement specified that the parties "agree to arbitrate claims against [the staffing agency] and its client"), *and Berryman v. Newalta Env't Servs., Inc.*, No. 18-793, 2018 U.S. Dist. LEXIS 186789, at *16 (W.D. Pa. Nov. 1, 2018) (same). In addition, the contract does not expressly state that EOG could take legal action if either Kimble or Bedrock breached its terms. *See Newman*, 23 F.4th at 402. For instance, EOG has no legal remedy if Kimble disclosed its proprietary or confidential information. *See id.* at 402-03 (finding no third-party beneficiary status where the agreement "did not clearly and fully spell out that [the defendant] could take legal action if [the plaintiff] decided to breach its other terms"). It is also telling that the Agreement's drafter could (but did not) expressly require Bedrock's contractors to arbitrate its claims against its clients. Taken together, these facts provide compelling evidence that the arbitration provision at issue was not intended to benefit EOG.[9]

## CONCLUSION

In short, there is neither an employment contract nor an arbitration agreement between EOG and Kimble. For that reason, Bedrock has no direct means of compelling Kimble and EOG to arbitrate their dispute. Bedrock's claim that it may require Kimble to arbitrate with EOG for reasons of estoppel is not persuasive. EOG does not have a sufficiently close relationship with Bedrock, and Kimble's claims are not intimately founded in and intertwined with the underlying contract obligations. Moreover, because EOG is not the intended third-party beneficiary of the

---

[9] This decision comports with other cases addressing similar issues. *See, e.g.*, *Oldham*, 2022 U.S. Dist. LEXIS 224206, at *3; *Flynn*, 2019 U.S. Dist. LEXIS 210098, at *4; *Newman*, 23 F.4th at 408. This Court can discern no reason to depart from the reasoning in those matters.

```
```

Agreement, the arbitration provision does not inure to its benefit. Thus, Kimble cannot be estopped from avoiding arbitration.

Accordingly, the Court denies Bedrock's motion. Doc. 59. Although the Court is required to stay an action pending arbitration upon request by one of the parties, 9 U.S.C. § 3, because the Court denies the motion to compel arbitration, the Court denies as moot EOG's motion to stay the proceedings pending arbitration. Doc. 37. It is so ordered.

_____
UNITED STATES DISTRICT JUDGE
MATTHEW L. GARCIA